Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 11 2014, 11:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW WILKINSON**
Gibson Law Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICAH T. LMINGGIO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1312-CR-635 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT 1
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1304-FA-10

**August 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Micah T. Lminggio appeals his conviction of Dealing in a Narcotic Drug,[1] a class A felony, and two counts of Serious Violent Felon in Possession of a Firearm,[2] both as class B felonies. Lminggio presents the following restated issue for review: Did the trial court err in admitting evidence obtained following a traffic stop of the vehicle Lminggio was driving?

We affirm.

The facts favorable to the convictions are that on the evening of April 17, 2013, Detective Natalie Lovett of the Lafayette Police Department (LPD) conducted surveillance of the house at 232 Chestnut Street in Lafayette. She was directed to that location by an Officer Withers, also of the LPD. Officer Withers informed Detective Lovett that he had received a phone call from J.A., who lived at that address. Officer Withers and Detective Lovett had received information from J.A. on previous occasions that proved reliable. On this evening, Officer Withers informed Detective Lovett that J.A. had called "and said that

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 35-48-4-1(a)(2) (West, Westlaw 2013), in effect at the time this offense was committed classified it as a class A felony. This statute has since been revised and in its current form reclassifies this as a Level 5 felony. *See* I.C. § 35-48-4-1(a)(2) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed on April 17, 2013, it retains the former classification.

[2] The version of the governing statute, i.e., Ind. Code Ann. § 35-47-4-5(c) (West, Westlaw 2013), in effect at the time these offenses were committed classified them as a class B felonies. This statute has since been revised and in its current form reclassifies this offense as a Level 4 felony. *See* I.C. § 35-48-4-1(a)(2) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because these offenses were committed on April 17, 2013, they retain the former classification.

there was some type of drug activity at the house." *Transcript* at 335. J.A. provided a description of a vehicle that was at the house at that time and involved in drug activity.

When Detective Lovett arrived on the scene she observed the subject vehicle parked in front of the house at 232 Chestnut. She parked her unmarked car several houses down the street and climbed into the backseat so that she could observe what was happening, while at the same time remaining hidden from view. She watched as two black males walked to the vehicle, one of whom she described as short and wearing a white T-shirt, and later identified as Lminggio. The men opened the door of the subject vehicle and the interior lights flipped on. A third person, later identified as Bridget Gulliford, sat in the back seat. Detective Lovett watched as Lminggio walked around to the hood of the car and raised it. At that point "[h]e was standing kind of over the hood kind of in the front uh driver's side quarter panel area, uh, and then the other black male was on the passenger side of the hood." *Id.* at 109.

Detective Lovett could not see what the men were doing while they were in front of the car. After a short time they shut the hood and got back into the vehicle, with Lminggio getting into the driver's seat. The other man, later identified as Steven Allen, got into the front passenger seat. They sat there for approximately five minutes before a van arrived on the scene and parked in front of the subject car. A white male exited the van at the same time Lminggio exited his vehicle. The two walked toward the house and out of Detective Lovett's line of view. When both men returned to their vehicles a short time later, the white male got into the van and Lminggio got back into the driver's seat of his car. The van immediately drove away. After a short time, so, too, did Lminggio's car. Lminggio

3

drove past Detective Lovett's vehicle and the detective turned around to watch it. She saw Lminggio's vehicle approach and then stop at a stop sign. Lminggio sat at the stop sign for "maybe thirty seconds", then put on his right turn signal and turned right. *Id.* at 112. Detective Lovett determined that the car had committed a traffic infraction by failing to signal his turn 200 feet in advance of making it. At that time, she advised nearby officers to execute a traffic stop of Lminggio's vehicle. Shortly thereafter, Lminggio's vehicle was stopped by LPD Officer Scott Anderson. Officer Anderson was joined at the scene by Officer Adam Mellady.

Officers Anderson and Mellady approached the vehicle and asked Lminggio for his driver's license. Officer Anderson also obtained IDs from Allen and Gulliford. Officer Anderson was familiar with Allen and knew that he had a criminal drug history. The officer also believed Gulliford might be the subject of a bench warrant. While Officer Mellady remained with Lminggio's vehicle, Officer Anderson spoke with the dispatcher to determine whether Lminggio's license was valid and whether Gulliford was wanted on a bench warrant. He learned that Lminggio's license was valid and that Gulliford was not the subject of a bench warrant. By this time, other LPD officers had arrived on the scene, including Officers Bartholomy and Lamar.

When the other officers arrived, Officer Anderson decided to deploy his canine to conduct a drug sniff of Lminggio's vehicle. The vehicle's occupants were removed for the canine's safety and Officer Anderson walked the dog around Lminggio's vehicle. Approximately ten minutes had elapsed since the traffic stop was initiated. The canine had been trained to detect the scent of marijuana, crack and powdered cocaine,

4

methamphetamine, and opiates. It alerted by the front passenger door, which indicated the presence of drugs. The officers detained Lminggio and his passengers and searched the vehicle. They found two handguns in the engine compartment of Lminggio's car. One, a loaded .38 caliber revolver, was hidden between the battery and the driver's side fender wall. The other was a loaded semiautomatic pistol, which was also found on the driver-side of the engine compartment.

Lminggio was placed under arrest, issued a traffic citation, and transported to jail. While in the rear seat of the squad car, Lminggio discarded three balls of crack cocaine near the seatbelt receptacle. The three balls were later determined to contain 9.15 grams of cocaine. Lminggio was charged with one count of dealing cocaine as a class A felony, one count of possession of cocaine as a class A felony, one count of theft/receiving stolen property, as a class D felony, two counts of carrying a handgun without a license, a class A misdemeanor, two counts of carrying a handgun by a convicted felon, a class C felony, and one count of serious violent felon in possession of a firearm, a class B felony. The State later added a habitual offender allegation.

Two separate trials ensued. Following the first, a jury trial, Lminggio was convicted as charged of dealing in a narcotic drug as a class A felony, possession of a narcotic drug as a class A felony, and two counts of carrying a handgun without a license as class A misdemeanors. He was acquitted of the charge of theft/receiving stolen property. After the first trial but prior to the second trial, the State dismissed several counts, as well as the habitual offender allegation. Following a bench trial, Lminggio was convicted of the remaining charges, i.e., two counts of serious violent felon in possession of a firearm as a

class B felony. After merging and vacating several of the charges of which Lminggio was found guilty, the trial court entered judgment of conviction on one count of dealing in a narcotic drug (Count I) and two counts of unlawful possession of a firearm by a serious violent felon (amended Counts VIII and IX). The court sentenced Lminggio to thirty-four years on Count I and fourteen years each on amended Counts VIII and IX. The court ordered that the sentences for amended Counts VIII and IX should run concurrently with each other and consecutive to the sentence imposed for Count I, for a total executed sentence of forty-eight years.

Lminggio does not dispute the propriety of the traffic stop,[3] but instead contends the stop was completed before a reasonable suspicion arose and consequently the police lacked a valid basis to conduct the dog sniff of his vehicle. Specifically, he contends the traffic stop was impermissibly "prolonged by a canine sniff and search without reasonable suspicion beyond that which would normally be expected from a stop to address a turn signal infraction." *Appellant's Brief* at 1. The State counters that Lminggio waived any

---

[3] Although Lminggio did signal his turn before executing it, he was cited for violating that portion of the pertinent statute that requires activation of a turn signal at least 200 feet prior to the turn. *See* Ind. Code App. § 9-21-8-25 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). This interpretation would seem to compel motorists who are sitting at a stop sign after having failed to activate a turn signal in the 200 feet last traveled before reaching the stop sign to proceed straight ahead, or risk a traffic ticket. One can imagine the quandary in which this would place a motorist who is traveling in an unfamiliar area or looking for an unfamiliar address or landmark. Experience teaches that a person in such circumstances often gains his or her bearings while sitting at a stop sign after scanning left and right. Be that as it may, we need not address the propriety of the stop because Lminggio concedes the point, *viz.*, "While the initial stop of Mr. Lminggio was justified in that he did not use a turn signal before making a right-hand turn …." *Appellant's Brief* at 13.

objection to the admission of the evidence found in the search of his vehicle because he failed to preserve the issue at trial. The State is correct.

Regardless of whether an appellant has filed a pretrial motion to suppress, a contemporaneous objection at the time the evidence was introduced at trial is required in order to preserve the issue for appeal. *Brown v. State*, 929 N.E.2d 204 (Ind. 2010). "The trial objection must 'stat[e] the specific ground for objection, if [it is] not apparent from the context,' so that '[a] mere general objection, or an objection on grounds other than those raised on appeal is ineffective to preserve an argument for appellate review.'" *Camm v. State*, 908 N.E.2d 215, 222 (Ind. 2009) (quoting *Raess v. Doescher*, 883 N.E.2d 790, 797 (Ind. 2009)). This requirement serves "to alert the trial judge fully of the legal issue." *Id.* (quoting *Raess v. Doescher*, 883 N.E.2d at 797).

The relevant evidence consisted of the two firearms found in the engine compartment of Lminggio's car and the crack cocaine Lminggio discarded while he was in the squad car. Taking those in chronological order, the State sought to introduce as Exhibit 3 one of the handguns found in the engine compartment of Lminggio's vehicle. When the State moved its introduction, defense counsel received permission to ask the following foundational question: "Is the gun, other than having the bullets removed and made safe, is the gun in the same or substantially the same condition it was when you discovered it? Does it look the same?" *Transcript* at 141. After Officer Anderson answered in the affirmative, defense counsel stated, "We'll show State's [E]xhibit 3

7

admitted, thank you."[4]  *Id.*  In other words, Lminggio did not lodge an objection to the admission of Exhibit 3.  At trial, the State sought to introduce photographs, denominated as Exhibits 12 and 13, of the cocaine found in the backseat of Officer Mellady's squad car after he transported Lminggio to jail.  When the State moved to admit the exhibits, defense counsel stated, "Matt can I see those again?  Thank you.  No objection."  *Id.* at 183.  A short time later, during the testimony of Officer Mellady, the State moved to introduce as Exhibit 7 the other handgun found in the engine compartment of Lminggio's vehicle.  When he did so, defense counsel stated, "Same previous objection Judge."  *Id.* at 176.  We can find no antecedent to counsel's reference to a "previous objection".  Therefore, there were no articulated grounds for the objection; it was a general objection.  A short time later, also during the direct testimony of Officer Mellady, the State moved to admit the cocaine into evidence as Exhibit 14.  Defense counsel interjected, "Same objection Judge."  *Id.* at 185.  Again, there is no discernible antecedent to "same objection".

The result is that, in chronological order, Lminggio did not object to the introduction of the first gun, but did object to the admission of the cocaine and the second gun, identifying as grounds for the objections the "same objection" impliedly cited in a previous objection, which it turns out does not exist.  It might be surmised that counsel was referring to a ground asserted in support of Lminggio's motion in limine.  We note, however, that the hearing on that motion was held almost two months before Lminggio's trial and the

_____

[4] We have accurately described the situation and faithfully reproduced the record with respect to this comment.  We make this observation because the comment attributed to defense counsel here is of the kind one would have expected the trial court to make in this circumstance.

8

court took the matter under advisement and ruled on the motion weeks before trial commenced. Moreover, at the hearing Lminggio asserted multiple grounds in support of his motion in limine, including the Fifth Amendment privilege against self-incrimination, the allegedly improper conduct of the traffic stop, and that the canine unit that performed the drug sniff was not sufficiently reliable to provide probable cause for the search of the vehicle. Thus, even if we were to regard the motion-in-limine proceedings as the antecedent to Lminggio's "same objection", the ground for the objection is not identified with sufficient specificity.

All of which means that Lminggio did not identify specific grounds for his objections, but instead merely lodged what must be regarded as a general objection. This was not sufficient to preserve for appellate review any particular argument relative to the admissibility of that evidence. *See Camm v. State*, 908 N.E.2d 215. We also note that Lminggio does not contend fundamental error occurred. *Cf. Brown v. State*, 929 N.E.2d at 207 ("[a] claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred"). The argument is waived.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.